AO93 Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | |
|---|---|
| In the Matter of the Search of a Black Apple iPhone contained in evidence bag A8994073, stored at the evidence room of the Casa Grande Border Patrol Station, located at 396 N. Camino Mercado, Casa Grande, Arizona. | Case No. 23-0010MB |

## SEARCH AND SEIZURE WARRANT

To:  Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona:

**As further described in Attachment A.**

The person or property to be searched, described above, is believed to conceal:

**As set forth in Attachment B.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before  2/13/23  *(not to exceed 14 days)*
☒ in the daytime 6:00 a.m. to 10:00 p.m. ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to any United States Magistrate Judge on criminal duty in the District of Arizona.

N/A ☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized ☐ for  30  days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: January 30, 2023 @ 2:15 pm   *[signature]*
                                                     Judge's signature

City and state: Phoenix, Arizona        Honorable Michelle H. Burns, U.S. Magistrate Judge
                                        *Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is a Black Apple iPhone in evidence bag A8994073 belonging to Davonte Roland Sonia (hereafter the "SUBJECT CELLULAR TELEPHONE"). The SUBJECT CELLULAR TELEPHONE is currently located in the evidence room of the Casa Grande Border Patrol Station, located at 396 N. Camino Mercado, Casa Grande, Arizona.

This warrant authorizes the forensic examination of the SUBJECT CELLULAR TELEPHONE for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

*Property to be seized*

1. Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE that relate to violations of Title 8, United States Code, Section 1324(a)(1)(A)(ii), including:

   a. All information related to the pickup, transportation of inadmissible aliens in the United States (including names, addresses, telephone numbers, location, or any other identifying information);

   b. All information related to any smuggling coordinators (including names, addresses, telephone numbers, location, or any other identifying information);

   c. All bank records, checks, credit card bills, account information, or other financial records;

   d. All information regarding the receipt, transfer, possession, transportation, or use of alien smuggling proceeds;

   e. Any information recording schedule or travel;

   f. Evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation; and

   g. Contextual information necessary to understand the above evidence.

2. Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

   As used above, the terms "records" and "information" include records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos;

1

photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | |
|---|---|
| In the Matter of the Search of a Black Apple iPhone contained in evidence bag A8994073, stored at the evidence room of the Casa Grande Border Patrol Station, located at 396 N. Camino Mercado, Casa Grande, Arizona. | Case No. 23-00010MB |

## APPLICATION FOR A SEARCH WARRANT

I, Border Patrol Agent Alexander Huyett, a federal law enforcement officer or attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**As further described in Attachment A**

located in the District of Arizona, there is now concealed:

**As set forth in Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is:
☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 8 U.S.C. §1324(a)(1)(A)(ii) | Transportation of Illegal Aliens |

The application is based on these facts:

**See attached Affidavit of Agent Alexander O. Huyett**

☒ Continued on the attached sheet.
☐ Delayed notice of _30_ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA /s/ Patrick E. Chapman

*Telephonically Sworn*

ALEXANDER O HUYETT  Digitally signed by ALEXANDER O HUYETT
Date: 2023.01.30 10:37:19 -07'00'
*Applicant's Signature*

Alexander O. Huyett, Border Patrol Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: January 30, 2023 2:15 pm

*Judge's signature*

City and state: Phoenix, Arizona

Honorable Michelle H. Burns, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is a Black Apple iPhone in evidence bag A8994073 belonging to Davonte Roland Sonia (hereafter the "SUBJECT CELLULAR TELEPHONE"). The SUBJECT CELLULAR TELEPHONE is currently located in the evidence room of the Casa Grande Border Patrol Station, located at 396 N. Camino Mercado, Casa Grande, Arizona.

This warrant authorizes the forensic examination of the SUBJECT CELLULAR TELEPHONE for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

*Property to be seized*

1.  Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE that relate to violations of Title 8, United States Code, Section 1324(a)(1)(A)(ii), including:

    a.  All information related to the pickup, transportation of inadmissible aliens in the United States (including names, addresses, telephone numbers, location, or any other identifying information);

    b.  All information related to any smuggling coordinators (including names, addresses, telephone numbers, location, or any other identifying information);

    c.  All bank records, checks, credit card bills, account information, or other financial records;

    d.  All information regarding the receipt, transfer, possession, transportation, or use of alien smuggling proceeds;

    e.  Any information recording schedule or travel;

    f.  Evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation; and

    g.  Contextual information necessary to understand the above evidence.

2.  Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos;

1

photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Alexander O. Huyett, being first duly sworn, hereby deposes and states as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to examine the cellular telephone further described in Attachment A (hereafter "SUBJECT CELLULAR TELEPHONE"), and in order to extract the electronically stored information set forth in Attachment B, which represent evidence and/or instrumentalities of the criminal violations further described below.

2. I am currently employed by the U.S. Customs and Border Protection, Office of Border Patrol, and have been since June 2010. I completed the Border Patrol Academy in September 2010 where I received instruction in constitutional law, immigration law, criminal law, and in federal/civil statues. I have also received instruction in the detection, interdiction, and arrest of narcotics smugglers, alien smugglers, and aliens illegally present in the United States.

3. During my experience as a Federal Agent, I have been the Case Agent for numerous criminal cases such as alien smuggling, criminal alien cases, and drug smuggling. I have worked directly with several Assistant U.S. Attorneys in these criminal cases, from gathering evidence to assisting in trials.

4. Since September 2022, I have been assigned as a Prosecution Agent for the Casa Grande Border Patrol Station. On several occasions, I have received and have been exposed to advanced training to improve my investigative and analytical skill sets. As a Prosecution Agent, I have sworn in numerous criminal complaints, and have been the seizing agent for evidence criminal cases.

5. The statements contained in this Affidavit are based on information derived from my personal knowledge, training, and experience; information obtained from the

knowledge and observations of other sworn law enforcement officers, either directly or indirectly through their reports or affidavits.

6. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, I have not set forth all the relevant facts known to law enforcement officers.

## LOCATION OF THE SUBJECT CELLULAR TELEPHONE

7. The SUBJECT CELLULAR TELEPHONE was seized incident to arrest of Devante Roland Sonia on December 22, 2022. The SUBJECT CELLULAR TELEPHONE was seized by United States Border Patrol (USBP) and has remained in the custody of the USBP since the date of its seizure: it is a Black Apple iPhone contained in evidence bag number A8994073. The SUBJECT CELLULAR TELEPHONE is currently located in the evidence room of the Casa Grande Border Patrol Station, located at 396 N. Camino Mercado, Casa Grande, Arizona.

8. In my training and experience, I know that the SUBJECT CELLULAR TELEPHONE has been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the SUBJECT CELLULAR TELEPHONE first came into the possession of USBP.

## BASIS FOR PROBABLE CAUSE

9. On December 22, 2022 at 2:30 pm, a Pinal County deputy stopped a black Nissan Rogue on westbound I-10 near mile marker 211 for speeding and following too closely. The deputy identified the driver as Devante Roland Sonia (SONIA), with a Georgia driver's license. The deputy also noticed seven passengers in the vehicle, along with camouflage clothing, and called Border Patrol for assistance. Border Patrol agents arrived a short time later and determined that all seven passengers were Mexican citizens and were illegally present in the United States. Agents also noted that the five-passenger Rogue was

2

overloaded, with one person sitting on the rear seat floor and two people on top of one another in the cargo/trunk area. Agents photographed the passengers in that state.

10. Once agents verified the passengers' immigration status, they arrested all eight occupants and transported them to the Casa Grande station. There, SONIA waived his *Miranda* rights and agreed to give a statement. He told agents that he lived in Atlanta and was currently homeless with his pregnant girlfriend. SONIA said that his friend from Atlanta recruited him to be a "driver" and told him he could earn hundreds of dollars per day. SONIA said that his friend paid for his plane ticket to Phoenix and a vehicle through the ride-sharing platform, Turo.

11. SONIA further stated that he arrived in Phoenix on December 21, 2022 and made contact with three people named "Somebody," "Eyes," and "Q" through WhatsApp, a phone messaging application. Through the phone, Q then instructed SONIA to drive to a specific location in Sierra Vista at 3:00 am and to share his location using a feature in WhatsApp. SONIA said that once he arrived there, they gave him a different location in Douglas, which SONIA described as a field. When he arrived, he honked the horn and seven people entered the vehicle. SONIA was then instructed through the phone to drive to Phoenix. He also remarked, "I literally did not know what I was out here for until these random motherfuckers hopped in my car and I'm on the phone trying to figure out what the hell is going on. And he's like, go, just drive." Agents corroborated parts of SONIA's story with a cursory look into his phone with the SONIA's consent. An indictment charging one count of Transportation of an Illegal Alien is currently pending against SONIA in CR-23-00071-PHX-JJT.

12. Use of WhatsApp is significant because, in my experience, I have seen Alien Smuggling Organizations (ASOs) direct their smugglers and people they are smuggling to utilize applications like WhatsApp specifically. This is done because allows for near instantaneous communication via text or voice call between people at any location.

3

Additional features of the application allow users to send their current physical location and send GPS pins to one another to obtain turn-by-turn directions. This feature is commonly used by smuggling coordinators in communicating pick up locations with drivers who are picking up groups of people who have recently entered the United States illegally.

13. WhatsApp also allows one user to delete messages remotely on all devices they were communicating with. Past investigations have shown that alien smugglers utilize this feature and notify the people they are working with that they are about to be arrested. This allows the facilitator or coordinator to delete their side of the conversation from the load driver's phone.

14. Based on my training and experience and that of other agents, human smugglers commonly use cellphones to communicate between drivers and smuggling coordinators. This is a current trend to guide human smugglers to a specific location north of the International Boundary Fence for illegal alien pickups in remote desert areas or on roads without identifiable mile markers. After smugglers pickup undocumented non-citizens at these locations, they transport them to another location further within the United States, often directed on cellphones, to assist their continued illegal presence in the United States.

15. SONIA had on his person at the time of arrest the SUBJECT CELLULAR TELEPHONE and confirmed during the property inventory that the SUBJECT CELLULAR TELEPHONE belonged to him.

16. SONIA's SUBJECT CELLULAR TELEPHONE was placed into a evidence bagged, labeled A8994073

## ITEMS TO BE SEIZED

17. Based upon the facts contained in this Affidavit, I submit there is probable cause to believe that the items listed in Attachment B will be found in the contents of the

SUBJECT CELLULAR TELEPHONE.

18. Based on my training, education, and experience in alien smuggling investigations, as well as the training and experience of other law enforcement officers with whom I have had discussions, I know that there are certain characteristics common amongst individuals involved in ASOs. Individuals involved in alien smuggling activity tend to:

    a. Retain records pertaining to financial transactions and the persons for whom the transactions are being conducted on their phones;

    b. Retain data pertaining to other co-conspirators involved in alien smuggling activity;

    c. Possess and maintain records reflecting bank transactions and/or money transfers;

    d. Maintain collections of records that are in a digital or electronic format in a safe, secure and private environment, including electronic communication devices (such as the three phones);

    e. Correspond with and/or meet with other alien smuggler associates to share alien smuggling information and/or materials;

    f. Retain correspondence from other alien smugglers co-conspirators relating to alien smuggling activity; and

    g. Maintain lists of names, addresses, and/or telephone numbers of individuals with whom the alien smuggler have been in contact and/or conducted alien smuggling activity.

## DIGITAL EVIDENCE STORED WITHIN A CELLULAR TELEPHONE

19. As described in Attachment B, this application seeks permission to search for records and information that might be found in the contents of the SUBJECT CELLULAR TELEPHONE. Thus, the warrant applied for would authorize the copying of

electronically stored information under Rule 41(e)(2)(B).

20. I submit that there is probable cause to believe records and information relevant to the criminal violations set forth in this Affidavit will be stored on the SUBJECT CELLULAR TELEPHONE for at least the following reasons:

    a. I know that when an individual uses a cellular telephone, the cellular telephone may serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime. The cellular telephone is an instrumentality of the crime because it is used as a means of committing the criminal offense. The cellular telephone is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that a cellular telephone used to commit a crime of this type may contain: data showing how the cellular telephone was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of internet discussions about the crime; and other records that indicate the nature of the offense.

    b. Based on my knowledge, training, and experience, I know that cellular telephones contain electronically stored data, including, but not limited to, records related to communications made to or from the cellular telephone, such as the associated telephone numbers or account identifiers, the dates and times of the communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books;" photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning system ("GPS") information.

    c. Based on my knowledge, training, and experience, I know that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a cellular telephone, deleted, or viewed via the internet. Electronic files downloaded to a cellular telephone can be stored for years at little or no

6

cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a cellular telephone, the data contained in the file does not actually disappear; rather, that data remains on the cellular telephone until it is overwritten by new data.

    d. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the cellular telephone that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a cellular telephone's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

  21. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the cellular telephone was used, the purpose of the use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be found in the contents of the SUBJECT CELLULAR TELEPHONE because:

    a. Data in a cellular telephone can provide evidence of a file that was once in the contents of the cellular telephone but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b. As explained herein, information stored within a cellular telephone may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within electronic storage medium (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware

7

detection programs) can indicate who has used or controlled the cellular telephone. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the cellular telephone was remotely accessed, thus inculpating or exculpating the owner. Further, activity on a cellular telephone can indicate how and when the cellular telephone was accessed or used. For example, as described herein, cellular telephones can contain information that logs session times and durations, activity associated with user accounts, electronic storage media that connected with the cellular telephone, and the IP addresses through which the cellular telephone accessed networks and the internet. Such information allows investigators to understand the chronological context of cellular telephone access, use, and events relating to the crime under investigation. Additionally, some information stored within a cellular telephone may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a cellular telephone may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The geographic and timeline information described herein may either inculpate or exculpate the user of the cellular telephone. Last, information stored within a cellular telephone may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

        c.     A person with appropriate familiarity with how a cellular telephone works can, after examining this forensic evidence in its proper context, draw conclusions

about how the cellular telephone was used, the purpose of its use, who used it, and when.

    d.  The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a cellular telephone that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, cellular telephone evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on one cellular telephone is evidence may depend on other information stored on that or other storage media and the application of knowledge about how electronic storage media behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e.  Further, in finding evidence of how a cellular telephone was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

  22.  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit imaging or otherwise copying the contents of the SUBJECT CELLULAR TELEPHONE, including the use of computer-assisted scans.

  23.  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto any premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

24.    I submit there is probable cause to believe that the items listed in Attachment B, which constitute evidence and/or instrumentalities of violations of Transporting Illegal Aliens, 8 U.S.C. § 1324(a)(1)(A)(ii), are likely to be found in the contents of the SUBJECT CELLULAR TELEPHONE further described in Attachment A.

ALEXANDER O HUYETT
Digitally signed by ALEXANDER O HUYETT
Date: 2023.01.30 10:38:07 -07'00'

Alexander O. Huyett
Border Patrol Agent
United States Border Patrol

Telephonically subscribed and sworn to me this 30th of January, 2023. @ 2:15 pm

HONORABLE Michelle H. Burns
United States Magistrate Judge

10